# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**AMANDA B. REICHELDERFER,**
                CASE NO. 5:25 CV 1401

      Petitioner,

      v.
                JUDGE JAMES R. KNEPP II

**HOLMES COUNTY JAIL, et al.,**

      Respondents.
                **MEMORANDUM OPINION AND ORDER**

Petitioner Amanda B. Reichelderfer ("Petitioner") filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1); *see also* Doc. 1-2 (Memorandum in Support). This case was referred to Magistrate Judge Jonathan D. Greenberg for a Report and Recommendation ("R&R") regarding the Petition under Local Civil Rule 72.2(b)(2). On October 3, 2025, Judge Greenberg issued an R&R recommending the Court dismiss the Petition pursuant to the fugitive disentitlement doctrine and deny Petitioner's other motions as moot. (Doc. 16). Petitioner filed objections to the R&R. (Docs. 17, 18). Both before and after the filing of the R&R, Petitioner filed motions for temporary restraining orders and motions related thereto. (Docs. 3, 4, 12, 20, 21, 22).

The Court has jurisdiction over the Petition pursuant to 28 U.S.C. § 2254(a). For the reasons set forth below, the Court denies Petitioner's habeas petition and denies as moot Petitioner's temporary restraining order motions.

## BACKGROUND

This habeas case, filed on July 3, 2025, stems from Petitioner's conviction on a probation violation in the Holmes County, Ohio Municipal Court, and resulting 30-day jail sentence. *See State v. Reichelderfer*, 2025 WL 842080 (Ohio Ct. App.).

Factual Background

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Fifth District Court of Appeals set forth the following facts on direct appeal:

> {¶2} On July 7, 2022, Captain Kim Herman of the Millersburg Police Department filed a complaint in the Holmes County Municipal Court, charging Appellant with one count of theft, in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. At her arraignment on July 11, 2022, Appellant entered a plea of not guilty to the charge. Appellant appeared before the trial court on November 15, 2022, withdrew her former plea of not guilty and entered a plea of no contest. The trial court sentenced Appellant to a jail term of 30 days, but suspended the sentence and placed Appellant on probation for a period of one (1) year. The trial court ordered Appellant to complete a drug and alcohol abuse counseling program.

> {¶3} Appellant signed a probation agreement on November 15, 2022. Rule 11 of the probation agreement required Appellant to "keep all appointments with probation officer unless otherwise directed." Probation Agreement, p. 2. In addition, Appellant was ordered to report monthly or as otherwise directed by her probation officer. The probation agreement expressly provided:

> > If you do not report on the correct day <u>DURING BUSINESS HOURS</u>, you may face revocation of your probation and jail time. <u>YOU MAY NOT REPORT BY LEAVING A VOICE MESSAGE AFTER BUSINESS HOURS</u>.

> *Id.*

2

{¶4} Further, Rule 5 provided:

> You are not permitted to possess, consume, or have under your control, any controlled substance or their accessories, except those prescribed by a physician. You shall not visit or remain at a place where illegal drugs are being used, possessed or sold. You will be required to submit to whatever type of test the probation officer feels is necessary to enforce this rule. You shall not possess, consume, or use any substance or item that is specifically designed or advertised to interfere with the results of a valid drug test. You shall not possess or consume any synthetic drug of abuse.

*Id.* at p. 3.

{¶5} George Crone, Appellant's original probation officer, did not require Appellant to submit to drug tests or report in person. In March, 2023, Appellant was assigned a new probation officer, Tabitha Hemenway, who required Appellant to report in person to her appointments. Appellant missed her in person probation appointment on March 20, 2023. Appellant attempted to report via a phone call. Hemenway informed Appellant a warrant would be issued for her arrest.

{¶6} On March 24, 2023, the State filed a motion to revoke/modify community control/probation after Appellant failed to abide by the terms of her probation. The trial court issued a warrant for Appellant's arrest on March 27, 2023. Appellant failed to have any communications with her probation officer between March, 2023, and December 19, 2023. The warrant was served on December 19, 2023, after Appellant was arrested on unrelated charges. That day, Appellant was drug tested. She admitted using amphetamines. The results of the drug test were positive for methamphetamines. On January 4, 2024, Appellant tested positive for methamphetamines and amphetamines, but denied any drug use. Appellant missed a second in person probation appointment on January 9, 2024.

{¶7} On January 10, 2024, the State filed a second motion to revoke/modify community control/probation based upon Appellant's two failed urine screens and failure to report for a scheduled probation appointment. Appellant filed a memorandum in opposition to the State's motion to revoke.

{¶8} At the initial hearing on the probation violation on January 24, 2024, the trial court set a $25,000.00 bail. The trial court conducted a pretrial on February 6, 2024, and an adjudicatory hearing on February 27, 2024. The adjudicatory hearing addressed both the March 24, 2023, and January 10, 2024 motions to revoke.

{¶9} At the adjudicatory hearing, Tabitha Hemenway, Appellant's probation officer, testified Appellant was transferred to her supervision in early March, 2023. Hemenway instructed Appellant to report in person on March 20, 2023. Appellant

3

did not appear for the appointment. Hemenway advised Appellant she would be issuing a warrant for her arrest due to her failure to report. Appellant was arrested on the warrant as well as on another charge on December 19, 2023. Hemenway noted Appellant did not report during those nine (9) months. Once Hemenway made contact with Appellant, Appellant was drug screened. Appellant admitted to using methamphetamines. Appellant failed the drug screen. The test was positive for methamphetamines.

{¶10} Appellant was drug screened a second time on January 4, 2024, and tested positive for methamphetamines and amphetamines, but denied any drug use at the time. Hemenway instructed Appellant to report in person on January 9, 2024. Appellant failed to report.

{¶11} Appellant testified on her own behalf. She admitted she missed her March 20, 2023 in person probation appointment, but explained she was working out of town and had no transportation. Appellant stated she called Hemenway to try to reschedule the appointment. With respect to her missed appointment on January 9, 2024, Appellant explained she was ill and had fallen asleep due to her medication. Appellant claimed she called Hemenway later in the day. Appellant explained George Crone, her original probation officer, allowed her to report via telephone due to the fact she lived a distance from Holmes County then she was "told it's something else and it was never gone over with me how she [Hemenway] wanted things done versus how he [Crone] had things set up for me." Transcript of February 27, 2024 Adjudicatory Hearing at p.18.

{¶12} Via Probation Violation/Adjudicatory Hearing, the trial court terminated Appellant's probation and sentenced her to thirty (30) days in the Holmes County Jail, finding Appellant had violated the terms and conditions of her probation.

*Reichelderfer*, 2025 WL 842080, at *1-2.

Procedural Background[1]

Petitioner was charged with theft in Holmes County Municipal Court on July 7, 2022. (Doc. 8-1). She was released on bond and arraigned on July 13, 2022. *See State v. Reichelderfer*, No. 22 CRB 00115 (Holmes Cnty. Mun. Ct.); Doc. 8-32, at 9-10 (copy of trial court docket). Plaintiff entered a not guilty plea and Attorney Mark Baserman, Jr. was appointed to represent her. *See* Doc. 8-32, at 9. Attorney Baserman requested discovery on July 18, 2022. *See id.* A pretrial

---

1. The following procedural background is taken from the documents submitted by Petitioner with her Petition, Respondent with its Answer, as well as the state trial and appellate court dockets.

conference was scheduled for July 26, but rescheduled three times at the request of Petitioner's counsel and once by the Court, ultimately to November 15, 2022. *See id.*; Docs. 8-3 to 8-6.

On November 15, 2022, Petitioner entered a no contest plea to the theft charge and the Court found her guilty. (Doc. 8-7). The court sentenced Petitioner to one year of probation, with 30 days of jail time suspended upon successful completion of probation. *Id.*

On March 27, 2023, the State filed a motion to revoke or modify Petitioner's probation. (Doc. 8-8). It asserted Petitioner had violated the terms of her probation by failing to report for a scheduled appointment on March 20, 2023. *Id.* at 2. The court issued a warrant in response to the motion. (Doc. 8-9).

Petitioner was ultimately arrested pursuant to the warrant on December 19, 2023, when she was arrested for another unrelated offense. Attorney Baserman was again appointed to represent her and she was released on bond. (Doc. 8-10). A pretrial conference was initially scheduled for January 9, 2024, but continued at Attorney Baserman's request to January 23, 2024. (Doc. 8-10). On January 10, 2024, the State filed a second motion to revoke or modify Petitioner's probation based on her failure to report as instructed to her probation officer on January 9, as well as positive drug tests for methamphetamine and amphetamines. (Doc. 8-11). The court issued a warrant. *See* Doc 8-12.

On January 23, 2024, Petitioner's counsel filed a memorandum in opposition to the State's motion to revoke. On January 24, the court held an initial hearing on the probation violation, which Petitioner attended with her attorney. (Doc. 8-13). The case was ultimately set for an adjudicatory hearing on February 27, 2024. (Doc. 8-14).

After that hearing, the court found Petitioner violated the terms of her probation, terminated her probation, and imposed the previously-suspended 30-day jail sentence. (Doc. 8-15). She was instructed to report to the Holmes County Jail on April 28, 2024. (Doc. 8-16).

On March 25, 2024, Petitioner filed a *pro se* motion to impose community control in lieu of imprisonment. *See* Doc. 8-32, at 7. The court denied the motion on April 1, 2024, and ordered Plaintiff to report to the jail as previously ordered. (Doc. 8-17). Petitioner failed to appear on April 28, 2024, and the court issued a warrant for her arrest. *See* Doc. 8-32, at 6-7.

On May 15, 2024, Petitioner filed a *pro se* motion for leave to file a delayed appeal and requested appointed counsel. *See id.* at 6. The Court again appointed Attorney Baserman. (Doc. 8-19). Baserman then moved with withdraw, and the court appointed attorney Haley McElroy for Petitioner's appeal. (Doc. 8-20). The court recalled the previously-issued warrant and granted Petitioner's motion to stay her sentence. (Doc. 8-21).

A copy of the trial court record and transcript of proceedings was filed with the Ohio Fifth District Court of Appeals on July 2, 2024. *See State v. Reichelderfer*, No. 24 CA 0009 (Ohio Ct. App.); Doc. 1-43 (appellate court docket) On July 29, 2024, Attorney McElroy filed an *Anders* brief certifying she found no non-frivolous arguments for appeal. (Doc. 8-39). Upon receipt of that brief, the appellate court granted Petitioner leave to file a *pro se* brief in support of her appeal. Petitioner did so. *See* Doc. 1-43.

On March 17, 2025, the appellate court affirmed the trial court after examining the issues raised in counsel's *Anders* brief as well as Petitioner's *pro se* brief. *See Reichelderfer*, 2025 WL 842080. On March 19, 2025, Petitioner filed a motion to stay execution of her sentencing pending reconsideration and further appeal and on March 24, 2025, she filed a motion for reconsideration. The appellate court denied both motions on March 31, 2025. *See* Docs. 8-42, 8-44. In its order

6

denying reconsideration, the appellate court addressed Petitioner's contention that the court "erroneously implied that a probation officer had authority to unilaterally modify the terms of Appellant's probation." (Doc. 8-42, at 2). It stated:

> "[P]ursuant to the terms of her probation agreement, Appellant was required to report monthly or as otherwise directed by her probation officer." *Reichelderfer*, 2025-Ohio-899 at ¶ 36. "Officer Crone did not require Appellant to report in person," however, her case was "transferred to Officer Hemenway, who explicitly informed Appellant she would have to report in person." *Id.* Appellant was always required to report to her probation officer. The fact that one probation officer did not require her to report in person, while her new probation officer did, was not a modification of the reporting requirement.

*Id.* at 2-3.

On March 28, 2025, the trial court lifted its previous stay of Petitioner's sentence and ordered Petitioner to report to the Holmes County Jail to serve her 30-day sentence by April 25, 2025. (Doc. 8-23).[2] On March 31, 2025, the trial court reissued a judgment entry instructing the same. (Doc. 8-24).

On April 14, 2025, Petitioner filed with the trial court an emergency motion to stay execution of sentence. *See* Doc. 8-32, at 3. On April 28, 2025, she filed a "Renewed Motion to Stay Execution of Sentencing Pending Resolution of Void Judgment Claim", and a "Renewed Motion to Vacate Void Judgment and Demand for Ruling on Pending Motions." *Id.*

On April 21, 2025, Petitioner filed a notice of appeal to the Ohio Supreme Court and two days later filed an emergency motion for stay of her sentence pending appeal. *See* Doc. 1-28. The Ohio Supreme Court denied the motion to stay on April 24, 2025. *State v. Reichelderfer*, 257 N.E.3d 176 (2025) (table). On May 6, 2025, the Ohio Supreme Court dismissed Petitioner's appeal

---

2. In its order, the trial court stated that Petitioner "ha[d] not filed any further appeals or motions" following the appellate court's affirmance. (Doc. 8-23). This is seemingly an incorrect statement as Petitioner had filed the above-referenced motions to stay execution of her sentence pending reconsideration and further appeal and for reconsideration with the appellate court.

for failure to file a Memorandum in Support of Jurisdiction. *State v. Reichelderfer*, 257 N.E.3d 203 (2025) (table). It also subsequently denied Petitioner's motion to reinstate her appeal on June 10, 2025. *State v. Reichelderfer*, 260 N.E.3d 431 (2025) (table). The Ohio Supreme Court further denied Petitioner's motion to substitute a corrected emergency motion for stay of execution. *See id.*

On May 12, 2025, the trial court issued an additional judgment entry after Petitioner failed to appear to serve her sentence on April 25, 2025. (Doc. 8-25). Therein, the court noted the appellate court's affirmance on March 17 and its own prior order issued March 28 requiring Petitioner to report to the Holmes County Jail on April 25, 2025. *Id.* The court explained that, following Petitioner's failure to appear to serve her sentence, she

> then began the process to appeal her case to the Supreme Court of Ohio. The Defendant requested a stay of execution of sentence to this Court and the Supreme Court. No stay was ever granted. The Defendant's appeal to the Ohio Supreme Court was dismissed on May 6, 2025. Therefore, the sentence is now imposed upon the Defendant.
>
> THEREFORE, IT IS HEREBY ORDERED, the original sentence that was stayed pending appeal is hereby imposed. The Defendant shall report to the Holmes County Jail on May 28, 2025 at 9:00 a.m.

*Id.* Petitioner again failed to appear for execution of her sentence and the court issued a bench warrant. *See* Doc. 8-26.

Habeas Petition

In her habeas Petition, Petitioner raises four grounds for relief:

**GROUND ONE:**     Violation of due process under the Fourteenth Amendment: Probation Terms were changed and enforced without notice, hearing, or court order.

**Supporting Facts:**     After my original probation officer, George Crone provided verbal modifications to my probation conditions (including telephone reporting, counseling in the county that I live in instead of the 180 Institute, and no drug testing), my new probation officer, Officer Hemenway, unilaterally reverted to the original written terms without a court motion to modify. I was not given notice, nor

8

did I sign any new conditions. When I missed a single in-person appointment due to being out of town for work (after notifying probation), a warrant was issued. This led to a probation revocation without proper notice or process.

\* \* \*

**GROUND TWO:** The trial court reimposed my jail sentence on 03/28/2025 while multiple post-judgement motions were still pending – including a Motion to Correct the Record (filed 03/26/2025), Motion for Reconsideration (filed 03/24/2025), and a Motion to Stay Execution of Sentence (filed 03/19/2025[)].

**Supporting Facts:** These motions were not ruled on before the court reimposed sentence, violating my right to due process. The court then reimposed the same sentence again on 05/12/2025, even though the Fifth District Court of Appeals had not issued its mandate and my jurisdictional appeal to the Ohio Supreme Court was still active. This created confusion about finality and jurisdiction, and exposed me to double jeopardy concerns, as the same sentence was imposed multiple times without clear legal authority or procedural closure. Also[,] a motion to reconsider denia[l] of supplementing the record remained pending until 03/31/2025[.] Trial court impos[]ed on 03/28/2025. Fifth District remained ruling on motions until 05/14/2025 showing jurisdiction was still within appeals status.

\* \* \*

**GROUND THREE**: Violation of due process under the Fourteenth Amendment: No probable cause hearing held before probation revocation; no opportunity to contest violation.

**Supporting facts:** No probable cause hearing held before probation revocation, violating due process. I was never allowed to contest the basis of the alleged violation[.] Issue was railed with counsel and in appellate filin[g] but Fifth District deemed it forfeited for lack of objection. Counsel failed to preserve it. I was not given a probable cause hearing and was unaware I needed to object on the record to preserve the issue.

\* \* \*

**GROUND FOUR:** Ineffective Assistance of Counsel under the Sixth Amendment.

**Supporting facts:** Trial counsel failed to object to material due process violations, including the absence of a probable cause [h]earing an[d] admission of a drug test without testimony from the administering officer. He also failed to [c]hallenge incorrect dates in probation documents that affected jurisdiction and tolling, dismissing their importance. Counsel did not pursue key witnesses, including the initial probation officer and employer. He dismissed my concerns about [O]fficer Hemingway's unauthorized charges as frivolous[,] [f]ailed to raise the issues about

9

[O]fficer Crone[']s terms that were [b]eing selectively enforced as well as no new probation terms were signed with [O]fficer Hemingway. This deprived me of effective assistance of counsel guaranteed under the 6th and 14th Amendments.

(Doc. 1, at 5, 7, 8-9, 10).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under the first path, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The habeas standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (citation

10

modified); *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (citation modified). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

**DISCUSSION**

R&R / Fugitive Disentitlement Doctrine

The R&R recommends the Court dismiss the Petition pursuant to the fugitive disentitlement doctrine. *See* Doc. 16. At the time of filing and at the time of the R&R's issuance, Petitioner was not in the custody of the State of Ohio, and was a fugitive. *See* Docs. 1-2, at 3; Doc. 16, at 6. The fugitive disentitlement doctrine limits access to the Court "by a fugitive who has fled a criminal conviction in a court in the United States." *In re Prevot*, 59 F.3d 556, 562 (6th Cir.1995). However, Petitioner's more recent filings indicate she is being held in the Holmes County Jail. *See* Docs. 20, 21, 22. As the R&R recognizes, application of the fugitive disentitlement doctrine "'is inappropriate under certain circumstances,'" including "'if the fugitive is recaptured.'" (Doc. 16, at 7) (quoting *Moller v. Alameda*, 2006 WL 778624, at *3 (N.D. Cal)). And the doctrine is "discretionary, not jurisdictional." *Id.* (citing *Moller*, 2006 WL 778624, at *3). Therefore, the Court will evaluate the merits of the underlying Petition rather than resolve the case on the fugitive disentitlement doctrine.

11

Petition

In addition to arguing the fugitive disentitlement doctrine applies, Respondent contends: "Petitioner's grounds for relief all center on alleged misapplication of Ohio Law or her disagreements with the State Court's admission of evidence and finding of facts during the adjudicatory hearing." (Doc. 8, at 12). It further contends Petitioner's grounds for relief have been "fully adjudicated by the courts of the State of Ohio, and the petitioner was afforded her rights to Counsel and Due Process under the U.S. Constitution." *Id.* at 13. Finally, Respondent contends the petition "does not cite a clear violation of federal law," nor demonstrate the state court decision was "clearly unreasonable and unsupported by the record." *Id.* The Court addresses each of Petitioner's Grounds for Relief in turn and finds she has not demonstrated a basis for habeas relief

*Ground One*

In Ground One, Petitioner asserts a due process violation on the basis that her probation terms "were changed and enforced without notice, hearing, or court order." (Doc. 1, at 5).

The state appellate court rejected this claim factually. It found Petitioner's probation agreement required her "to report monthly or as otherwise directed by her probation officer" and that agreement expressly provided that failure to report on the correct day during business hours could not be cured by leaving a voice message after business hours. *Reichelderfer*, 2025 WL 842080, at *1. The appellate court further summarized the probation violation adjudicatory hearing, including testimony from both Petitioner and Petitioner's probation officer indicating the latter instructed Petitioner to appear in person on March 20, 2023, that Petitioner failed to report, and that Petitioner admitted missing the appointment, but offered excuses for her failure to do so. *See id.* at *2. Addressing this contention on reconsideration, the appellate court explained:

> "[P]ursuant to the terms of her probation agreement, Appellant was required to report monthly or as otherwise directed by her probation officer." *Reichelderfer*,

> 2025-Ohio-899 at ¶ 36. "Officer Crone did not require Appellant to report in person," however, her case was "transferred to Officer Hemenway, who explicitly informed Appellant she would have to report in person." *Id.* Appellant was always required to report to her probation officer. The fact that one probation officer did not require her to report in person, while her new probation officer did, was not a modification of the reporting requirement.

(Doc. 8-42, at 2). Again, the state court found factually that "Officer Hemenway . . . explicitly informed Appellant that she would have to report in person." *Reichelderfer*, 2025 WL 842080, at *5. These facts are presumed correct, and Petitioner has not shown them, by clear and convincing evidence, to be erroneous. 28 U.S.C. § 2254(e)(1). These facts directly contradict Petitioner's claims that her probation terms were changed at all, much less changed in a manner that violates the due process clause.

The Court finds Petitioner has not demonstrated an entitlement to habeas relief on Ground One.

*Ground Two*

In Ground Two, Petitioner asserts the trial court reimposed her jail sentence on March 24, 2025, following her appeal, despite the presence of pending motions for reconsideration and a stay that had not yet been ruled upon by the appellate court. (Doc. 1, at 7). She contends this violates due process. *Id.* Petitioner further contends the trial court then reimposed her sentence on May 12, 2025 "even though the Fifth District Court of Appeals had not issued its mandate and [her] jurisdictional appeal to the Ohio Supreme Court was still active." *Id.* Petitioner contends this "created confusion about finality and jurisdiction" and "exposed [her] to double jeopardy concerns." *Id.*

At its core, Petitioner's second ground for relief sounds in Ohio law and Ohio state court procedure. Plaintiff contends the trial court lacked jurisdiction to reimpose her sentence both on March 24 and May 12, 2025.. But the Ohio courts rejected her claims when she sought a stay on

this basis. "A federal court may not issue [a] writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) ("[A] violation of state law is not cognizable in federal habeas [ ] unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.").

Moreover, even if Petitioner could somehow establish that the trial court lacked jurisdiction at the time it issued its March 24, 2025, order, the trial court ultimately reimposed Petitioner's 30-day sentence on May 12, 2025. Although Petitioner contends this was somehow inappropriate because her appeal was still active, she is incorrect. The appellate court denied her appeal on March 17, 2025, and further denied her motions for reconsideration and to stay on March 31, 2025. The Ohio Supreme Court dismissed her appeal on May 6, 2025. That Petitioner later filed unsuccessful motions to continue to challenge those decisions does not render her appeal "active and unresolved" on May 12, 2025, as she asserts. (Doc. 1-2, at 8). Even if Petitioner could establish some error in the state court procedure, she has not established an error that "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *McKee*, 526 F.3d at 897. Petitioner has failed to point to clearly established Supreme Court caselaw supporting her claim that her constitutional rights were violated. Petitioner is not entitled to habeas relief on Ground Two.

14

*Ground Three*

In Ground Three, Petitioner asserts a due process violation on the basis that "[n]o probable cause hearing [was] held before the probation revocation [and she had] no opportunity to contest [the] violation." (Doc. 1, at 8).

The United States Supreme Court has determined "that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). The same is true for probation revocation. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973). In *Morrissey* (parole) and *Gagnon* (probation), the Supreme Court held that alleged violators are entitled to two hearings. The first is a preliminary hearing at the time of arrest and detention to determine whether there is probable cause to believe the accused committed a violation of her parole, and the other is a somewhat more comprehensive hearing held prior to entry of the final revocation decision. *Morrissey*, 408 U.S. at 480; *Gagnon*, 411 U.S. at 782.

 It is well-settled that revocation proceedings (of parole or probation) need only meet the "minimum requirements of due process" by providing the following procedural safeguards:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon*, 411 U.S. at 786 (quoting *Morrissey*, 408 U.S. at 489).

Petitioner raised the substance of Ground Three to the Ohio appellate court in her *pro se* brief, and counsel addressed it in the *Anders* brief. The state appellate court addressed this claim as follows:

15

{¶19} Counsel for Appellant raises a potential argument the trial court violated Appellant's due process rights by failing to conduct a probable cause hearing.

{¶20} "Before a defendant's probation can be revoked, a two-part due process requirement must be met." *State v. Grove*, 2016-Ohio-4818, ¶ 12 (7th Dist.), citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). First, the trial court must conduct a preliminary hearing to determine whether there is probable cause to believe the defendant violated the terms of his probation. (Citation omitted.) *Id.* Next, the court must hold a final hearing to determine whether probation should be revoked. *Id.* The purpose of such a hearing is to inquire into whether the probationer's conduct comported with the terms of his court-ordered probation. *State v. Richard*, 2016-Ohio-8562, ¶ 5 (7th Dist.). However, "the judgment of a trial court revoking probation or community control sanctions will not be reversed where two separate hearings have not been held unless it appears from the record that the defendant was prejudiced by the failure to hold a preliminary hearing". *State v. Kiser*, 2009-Ohio-1337, ¶ 21 (5th Dist.)

{¶21} Appellant did not object to the claimed due process violations. Generally, failure to object to due process violations during a probation revocation waives all but plain error. *State v. Klosterman*, 2016-Ohio-232, ¶ 15 (2nd Dist.). Under the plain error standard of review, Appellant bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. West*, 2022-Ohio-1556, ¶22. An appellate court has discretion to notice plain error and is not required to correct it. *Id.*

{¶22} Upon review of the record, we find Appellant was not prejudiced by the trial court's failure to conduct a preliminary hearing. We further find no error, plain or otherwise, as the result of the trial court's failure to hold separate hearings.

{¶23} We agree with appellate counsel's conclusion there is no merit to an argument Appellant was denied due process.

\* \* \*

{¶34} In her second assignment of error, Appellant argues the trial court violated her right to due process by failing to conduct a probable cause hearing, during which she could have explained her understanding of the terms of her probation as told to her by her original probation officer, George Crone.

{¶35} We addressed the trial court's failure to conduct a probable cause hearing under Appellate Counsel's first potential assignment of error, and found Appellant was not prejudiced by the trial court's failure to conduct a preliminary hearing. We also found no error, plain or otherwise, as the result of the trial court's failure to hold separate hearings.

{¶36} We further note, pursuant to the terms of her probation agreement, Appellant was required to report monthly or as otherwise directed by her probation officer. Officer Crone did not require Appellant to report in person. Appellant's case was subsequently transferred to Officer Hemenway, who explicitly informed Appellant she would have to report in person. Appellant's actions based upon Officer Crone's initial terms and conditions is irrelevant to whether she violated the terms and conditions as required by Officer Hemenway. A probable cause hearing would not have affected the outcome.

{¶37} Appellant's second assignment of error is overruled.

*Reichelderfer*, 2025 WL 842080, at *4, *5-6.

The state appellate court cited the relevant United States Supreme Court standard (*Gagnon*), and found Petitioner had not demonstrated she was prejudiced by the trial court's failure to hold separate preliminary and final adjudicatory hearings.

To obtain habeas relief a petitioner must demonstrate "actual prejudice" from the alleged constitutional violation. *See Davis v. Ayala*, 576 U.S. 257, 267 (2015) ("[H]abeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Petitioner cannot do so here where she was provided notice of the claimed probation violations, the evidence of her violation was provided at the hearing, and she was afforded the opportunity to be heard, as well as the opportunity (through counsel's advocacy) to confront and cross-examine the probation officer witness against her. Further, she was appointed counsel from the outset, and a judicial officer conducted her adjudicatory hearing and issued a written decision. She was thus provided the "minimum requirements of due process" *Gagnon* and *Morrisey* expressly require. Contrary to Petitioner's contention that she had "no opportunity to contest [the] violation" (Doc. 1, at 8), Petitioner was in fact provided a full opportunity to do so. She has thus demonstrated no prejudice from any alleged constitutional violation.

Other courts applying *Gagnon* and *Morrisey* have similarly found no basis for habeas relief when a petitioner has a single hearing rather than the two hearings contemplated, where the hearing provided the basic requirements of due process and the petitioner was not prejudiced. *See, e.g.*, *Vashey v. Wall*, 2004 WL 1242548, at *5 (D.R.I.) (denying habeas relief and stating: "*Gagnon* and *Morrissey* are primarily concerned with ensuring that an alleged probation/parole violator receives a fair proceeding consistent with the due process clause. As the U.S. Supreme Court found in *Gagnon*, a prompt probable cause hearing followed by more comprehensive final revocation hearing is sufficient to satisfy the due process clause. However, nothing in *Gagnon* nor *Morrissey* prohibits a state from combining those hearings into one, prompt full hearing, where all the rights set forth in *Gagnon* and *Morrissey* are provided. . . . Accordingly, I find that the state Supreme Court's decision is not contrary to federal law."); *see also Pierre v. Wash. State Bd. of Prison Terms & Paroles*, 699 F.2d 471, 473 (9th Cir. 1983) (denying habeas relief and holding "*Morrissey* does not contain an absolute requirement that there be two hearings, rather than one, when the formal on-site parole revocation hearing is promptly held and fully satisfies the due process requirements enunciated in that case"); *cf. Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1423–24 (D.C. Cir. 1996) (holding, in a § 1983 class action, that a preliminary hearing is unnecessary when a formal revocation hearing is held within thirty days of execution of parole violation warrant).

In light of the foregoing, the Court concludes Petitioner is not entitled to habeas relief on Ground Three.

*Ground Four*

In Ground Four, Petitioner contends her trial counsel was ineffective for multiple reasons. (Doc. 1, at 10). Petitioner raised a similar contention on her direct appeal.

The two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984), is the clearly established federal law governing ineffective-assistance claims. This standard requires the habeas petitioner to establish (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. To satisfy the first prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. To satisfy the prejudice prong, the habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *See Harrington*, 562 U.S. at 105. First, the standards of *Strickland* and § 2254(d) are both highly deferential. *See Strickland*, 486 U.S. at 689.When both apply, the ordinary deference in habeas review is "doubly so." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Second, unreasonableness under *Strickland* is different from unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* Instead, the question is whether a reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. *Id.* Because the *Strickland* standard is a general one, the range of reasonable applications is substantial. *Mirzayance*, 556 U.S. at 123.

The state appellate court addressed both counsel's raising of an ineffective assistance of counsel issue in her *Anders* brief and Petitioner's *pro se* argument and concluded Petitioner had not established prejudice:

19

{¶24} Counsel also raises a potential argument Appellant was denied the effective assistance of counsel.

{¶25} A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied upon as having produced a just result. *Id.*

{¶26} We have reviewed the record and do not find trial counsel committed any error which, but for, would have resulted in a different outcome in the proceedings. Appellant's trial counsel zealously advocated for her by filing a memorandum in opposition, arguing Appellant's term of probation was tolled by the filing of the March 24, 2023 motion to revoke. Trial counsel further asserted the January 10, 2024 motion to revoke was not actionable because the conditions of Appellant's probation did not require her to report in person or submit to drug testing. At the revocation hearing, trial counsel cross-examined Tiffany Hemenway, Appellant's probation officer, about the violations. Trial counsel also called Appellant to the stand to explain her failure to report and her understanding of the terms and conditions of her probation. Trial counsel also moved the trial court to extend Appellant's supervision in lieu of jail time.

{¶27} We agree with appellate counsel's conclusion there is no merit to an argument Appellant was denied the effective assistance of counsel.

* * *

{¶28} In her first assignment of error, Appellant raises a claim of ineffective assistance of counsel. Specifically, Appellant maintains trial counsel was ineffective for failing to submit key evidence, including a doctor's note and work orders, which would have explained her missed appointments, failing to object to the use of the January 4, 2024 drug screen which was obtained during an unrelated matter, and failing to challenge the "unauthorized changes" made to the terms and conditions of her probation by Officer Hemenway. Appellant concludes she was prejudiced as a result of these omissions.

{¶29} We addressed a claim of ineffective assistance of counsel in Appellate Counsel's second potential assignment of error. Upon review of the record, we find no evidence to establish trial counsel committed any error which, but for, would have resulted in a different outcome in the proceedings.

{¶30} At the revocation hearing, Appellant testified and explained her reasons for missing her probation appointments. Appellant has failed to establish the admission of evidence supporting her explanations, such as a doctor's note or work orders, would have resulted in a different outcome.

{¶31} With respect to trial counsel's failure to object to the admission of the results of the drug screen, we note, "[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Fears*, 86 Ohio St.3d 329, 347 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). A defendant must also show he was materially prejudiced by the failure to object. *Holloway*, supra at 244. Appellant is unable to make such a demonstration.

{¶32} Finally, even if trial counsel challenged Officer Hemenway's "unauthorized changes" to Appellant's probation, such challenge would not have been successful. Pursuant to her probation agreement, Appellant was required to report monthly or as otherwise directed by her probation officer. Although Officer Crone did not require Appellant to report in person, Officer Hemenway specifically required Appellant to report in person. Officer Hemenway had the authority to make changes to the terms and conditions of Appellant's probation.

{¶33} Appellant's first assignment of error is overruled.

*Reichelderfer*, 2025 WL 842080, at *4-5. Upon review, the Court finds Petitioner has not established the state court decision regarding her ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the recommended final disposition of Judge Greenberg's R&R (Doc. 16) – that the Petition be dismissed – be, and the same hereby is, ADOPTED as the Order of this Court, for the alternate reasons stated herein, and the Petition (Doc. 1) is DENIED as set forth specifically herein; and it is

FURTHER ORDERED that Petitioner's Motions for Temporary Restraining Orders (Docs. 3, 4, 12, 20, 21, 22) be, and the same hereby are, DENIED as moot; and it is

FURTHER ORDERED that Petitioner's Motion/Request for Waiver of PACER Fees and Restoration of Access (Doc. 23) be, and the same hereby is, DENIED as moot; and it is

FURTHER ORDERED that, because Petitioner has not made a substantial showing of a denial of a constitutional right directly related to her conviction or custody, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); Rule 11 of Rules Governing § 2254 Cases. And the Court

FURTHER CERTIFIES that an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: February 10, 2026

22